Smith, J.
The question presented in this case is, whether the act of May 19, 1894 (Vol. 91 O. L. 797), which the plaintiffs in error rely upon as their justification for the proposed issue and sale of $100,000.00 of the bonds of the city of Cincinnati, tq provide money for the payment of deficiencies in the various funds of the municipal departments of the city, is a valid and constitutional enactment. If it is, we understand it to be conceded by the plaintiff below, that the relief prayed for, viz.: that the issue of such bonds should be enjoined, should be denied ; and that it is practically conceded on the other side, that if the law is in conflict with any of the provisions of the state, that the relief prayed for should be granted.
The first section of this act provides, that “ in cities of the first grade of the first class, the board of administration shall, in addition to the powers already possessed by them, have authority, when in their judgment the same shall be necessary, and under the provisions thereof, to issue the bonds of such cities to an amount not to exceed in the aggregate the sum of $100,000.00, to provide payment of deficiences in the various funds of the municipal departments of such cities, that may exist at the close of the fiscal year ending December 13, 1894.” And the succeeding sections point out the manner in which the bonds shall be issued and sold, and the disposition to be made of the proceeds arising from the sale thereof.
It is urged that this act is in violation of sec. 1, art. XIII, of the constitution of the state, which provides that, “ the general assembly shall pass no special act conferring corporate powers,” and that it confers corporate power upon the city of Cincinnati alone. Without going into the discussion of this question at great length, we state the conclusions at which we have arrived as briefly as we can.
In the, first place we are of the opinion that the act in question does confer corporate power. If it is a general law as opposed to a special one, it is all right, and not in conflict with the section of the constitution above quoted. If, how *359 ever, it is a special act, undertaking to confer corporate power, though in form or appearance a general law, it is invalid.
It is urged, however, that this act does not confer corporate power upon the city, for the reason that the city authorities already, under existing valid laws, have the right to do what they are proposing to do, viz., to issue bonds of the city to the amount of $100,000.00, to meet the deficiencies in the various departments, which they saw would exist on December 31, 1894; and section 2701 is cited as the statute which gives such power. It reads as follows: “ The trustees or council of any municipal corporation, for the purpose of extending the time of the payment of any indebtedness, which,, from its limits of taxation, such corporation is unable to pay at maturity, shall have power to issue bonds of such corporation, or borrow money, so as to change but not increase the indebtedness, in such amounts and for such length of time and at such rate of interest as the council may deem proper, not to exceed the rate of eight per cent, per annum.
We think, however, that this section does not give the authorities the right to do what they are preparing to do. It seems to be intended to give the right where a funded indebtedness of the city exists, to issue new bonds in the cases specified therein, to take up the old ones, not increasing the amount of the debt, for the purpose of thereby extending the time for the payment of the original amount. There is no pretense that this is the purpose here. If the. city had the power under this section, what was the necessity for an act of this kind ? Rut the conclusive answer to this claim is, that the petition and proceedings of the board, set out therein, shoiv, beyond all controversy, that it claims the right solely under this act of May 19, 1894; and that all of their proceedings are based thereon; and this is in effect admitted by the filing of the demurrer thereto. On the issue raised thereby, the question was adjudicated by the court of common pleas, and the propriety and correctness of which action is now before us.
*360 2. On the face of this law, then, there being a grant of power to the boards of administration in cities of the first grade of the first class, to issue bonds to provide for the pay- ■ ment of deficiencies in the various funds of the municipal departments for the fiscal year ending December 31, 1894, if, at the date of the passage of the act, or at any time thereafter up to January 1, 1895, there was a city of the first grade of the first class in the state other and in addition to the city of'Cincinnati, or if, in accordance with the statute, there might be another city of such grade and class during that time, to which the provisions of the act in question would apply, our understanding of the law, as laid down by our Supreme Court, is, that this would make the statute a general as opposed to a special one; that is, that under the system of classification of municipal corporations, as established by the legislature and upheld by the courts, as the law would apply to all cities of the first grade of the first class in the state, it would not be open to the objection that it was a special act conferring corporate power. But, on the other hand, if there be no city in the state other than Cincinnati to which, by the terms of the law itself, it could apply, or which “can in the future come within its operation without doing violence to the manifest object and purpose of its enactment, and to the clear legislative intent, it is a local and special act, however strongly the form it is made to assume may suggest its general character.” This is-the language used by Owen, J.,iu deciding the case of the State v. Pugh, 43 Ohio St. 98, on page 112. See, also, State v. Anderson, 44 Ohio St. 247; 45 Ohio St. 66, and City of Kenton v. State, 32 Law Bul. 394, to appear in 51st Ohio St.
What then are the facts in this case as they appear in the light of the legislation of the state, of which we must take notice, the issue in this case having been raised on a general demurrer to the petition filed below. It is averred in the petion, and admitted by the demurrer, that Cincinnati is a city of the first grade of the first class. By section 1546, Rev. *361 Stat., a classification of municipal corporations is made. And by section 1547, which was passed-(Vol. 66, O. L. 149), it is provided “ that existing corporations organized as cities of the first class ” (which then were Cincinnati, Cleveland and Toledo), “shall remain such, and their grades, and the grades of those which may become cities of the first class, shall be determined as follows: Those wrhich on the first day of July last had, and those which hereafter on the first day of July in any year, have, according to an official report or abstract of the then next preceding federal census, more than two hundred thousand inhabitants, shall constitute the first grade.”
Under this section, Cleveland was designated as a city of the first class, and, in fact, it was then, according to its population, a city of the second grade of the first class, Cincinnati being the only city of the first grade, and there is no public act of the legislature or executive departments, of which we have any knowledge, or of which we must take judicial notice, that it or any other city of the state, has been advanced so as to become a city of the first grade of the first class. Indeed it is conceded in argument, that no steps have been taken by any branch of the government, or of any municipal corporation, or any vote of the people, of any municipality, to make any other municipal corporation a city of the first grade of the first class. But the claim is made by the counsel for the plaintiffs in error, that under the provisions of the section above referred to, that when a city of any grade is found by the preceding decennial census to have a population as required by thi.s statute for a city of the first grade of the first class, that ipso facto, and without other proceedings of any kind whatever, it becomes a city of such grade and class; and it is said, and perhaps correctly, that the last decennial census shows that the city of Cleveland then had a population of more than 200,000, and that the court must take judicial notice of thie fact, and that it is now, andjjever since has been, a city of that grade and class; and, therefore, that the law, *362 the constitutionality of which is here questioned, applies as well to Cleveland as to to Cincinnati, and is, therefore, valid and constitutional.
We are of the opinion that this claim of the counsel for plaintiffs in error is not well founded. Looking at the provision of this section 1547 alone, it is plausible, and might be sound. But in attempting to ascertain the meaning of, and the proper construction to be placed upon any statute, we are bound to take into account the whole of the legislation in pari materia. And in this case, section 1547 (the one relied upon) is not the only law upon this subject. It is found as a part of chapter 1, title 12, division 2, the heading of which is, “Classification, General Powers,” while chapter 6, of the same title, proceeds by sections 1617, 1618,1619, and post., to point out explicitly how a city or village is to be advanced to a higher grade or class. It is true, that section 1617 does not specifically refer to the advancement of a city of one grade of a class, to a higher grade; but in the subsequent sections, and especially the language used in section 1619, where it is said that the “council of any corporation which, according to such statement, has the requisite population to be advanced to a corporation of the next higher class or grade, shall have the power at any time, by ordinance passed for such purpose, to submit to the voters of the corporation, the question whether such corporation shall be advanced to the class or grade of the next higher corporation,” leads us to the conclusion that it was the legislative intent, that the steps necessary to be taken to advance a city of one class to a higher one, must also be taken to advance a city of the second grade of the first class, to the first grade ofthe first class. It is expressly held in the case of State v. Wall et al., 47 Ohio St. 499, and State v. Toledo, 48 Ohio St. 112-129, that, as to all advancements of a city from one class to another, the law does not execute itself, but the statutory steps in all such cases must be taken. And in the case of The State v. Smith, 48 Ohio St. 210-218, it is said in the decision of the court : “Any city with a popula *363 tion of 200,000 and over, is eligible to be a city of tbe first grade of the first class : State v. Wall et al., 47 Ohio St. 499. Thus it will be observed that Cleveland could have entered the grade and class to which Cincinnati belongs, at' any time, by. complying with the provisions of the statute on the subject. And it is the possibility that other cities may enter a certain grade of a class, and not the certainty that they will, that gives to a law creating the grade a general character; State v. Toledo, 48 Ohio St. 112.”
This must settle the question, so far as this court is concerned, that steps must be taken to advance from the second to the first grade.
The steps pointed out as necessary to be taken to make such advancements are found in sections 1617-18-19, Revised Statutes, and these provide for action by the council, a submission of the question to the voters, and, by reference, the election is to be hadas provided in chapters 3 and 4 of the division, and by section 1582, chapter 4, it is provided that the vote must-be taken at “the next annual election for officers of such city or village.
The municipal election at which the vote is to be taken, we hold to be the annual election for municipal officers, which is held on the first Monday of April, annually.
If these conclusions be correct it is manifest that at the date of the passage of this law of May 18, 1894, there was not and could not have been in this state, afterwards and prior to January 1, 1895, a city of the first grade of the first class, which on the 31st day of December, 1894, could have had any deficiencies in the various funds in the muncipal departments of such city, other than the city of Cincinnati, and, consequently, the power was conferred upon that city alone, as the legislature must be’ presumed to have known and intended. The power was conferred, then, by a special act, and, consequently such act was invalid.
The conclusions at which we have arrived on this point, *364 render it unnecessary for us to consider and pass upon the other questions argued — that is whether, conceding that Cleveland was a city of the first grade of the first class, the law could-be held to apply to it.
I. J. Miller, for plaintiff in error.
Fred. Hertenstein, for the City.
The judgment of the court of common pleas overruling the demurrer to the petition, and granting the relief prayed for, will be affirmed.